IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| NIKE, INC., <br><br> Plaintiff, <br><br> v. <br><br> QUANZHOU YIYI SHOE INDUSTRY CO., LTD. and THE INDIVIDUAL AND ENTITIES OPERATING QUANZHOU YIYI SHOE INDUSTRY CO., LTD., <br><br> Defendants. | Case No. 25-cv-03777 <br><br> **Judge Jeremy C. Daniel** <br><br> **Magistrate Judge Jeannice W. Appenteng** |

## RESPONSE TO MINUTE ORDER [31]

Plaintiff Nike, Inc. ("Nike") submits this response to Minute Order [31]. Nike is seeking equitable relief in the form of a permanent injunction to prevent future infringement of its trademarks by an intentional counterfeiter. Defendant, who chose not to participate in these proceedings, does not suffer any burden by being ordered to comply with the law. Legal authority supports that Nike is permitted to seek the requested relief and that the Court has broad discretion to fashion an effective injunction. There is no statute or other controlling legal authority requiring that an injunction be limited to only the specific trademarks that Nike caught Defendant counterfeiting. The Court has also entered nearly identical relief for Nike in multiple previous cases involving online counterfeiters. Accordingly, Nike respectfully requests entry of the permanent injunction as proposed and that the Court discharge the order to show cause.

## BACKGROUND

Nike owns numerous famous and federally registered trademarks, including the Nike Trademarks identified in the Amended Complaint. *See* [13] at ¶¶ 6-8; *see also Nike, Inc. v. "Just Did It" Enters.*, 6 F.3d 1225, 1226 (7th Cir. 1993); *Nike, Inc. v. Nikepal Int'l, Inc.*, 2007 U.S. Dist. LEXIS 66686, at *16-17 (E.D. Cal. Sep. 7, 2007); *Nike Inc. v. Variety Wholesalers, Inc.*, 274 F. Supp.2d 1352, 1372 (S.D. Ga. 2003). Nike uses its Nike Trademarks in connection with a variety of footwear and apparel ("Nike Products"). *See* [13-1]. Nike Products generally use several Nike Trademarks on the product, packaging, or labels. *See* [13] at ¶ 7. Nike's success has resulted in significant counterfeiting of the Nike Trademarks by anonymous online stores selling Counterfeit Nike Products, including Defendant. *See id.* at ¶¶ 19, 21. This action was filed to combat Defendant's counterfeiting of the Nike Trademarks. *See id.* at ¶ 1.

Defendant is an intentional, egregious counterfeiter. *See* [28-1]. Specifically, Defendant's storefront displays footwear copying Nike's Air Jordan 1 shoe with an obscured Nike Swoosh mark. *Id*. The product is offered in wholesale quantities in multiple colors and styles and uses "Retro 1" in the item title to covertly communicate to a consumer that the product is a counterfeit Air Jordan 1 shoe. *Id*. Defendant also used "TRAVIS X LOW OG REVERSE MOCHA" in the item title to covertly communicate that it sells different variations and colorways of the Air Jordan 1 shoe[1]. *Id.*

---

[1] One variation sold by Nike is the "Travis Scott x Air Jordan 1 Retro Low OG" in the colorway "Reverse Mocha" and low-top model. *See* Ex. 1, Declaration of Berel Y. Lakovitsky ("Lakovitsky Decl.") at ¶ 2.



*Figure 1*

The received product is a pair of counterfeit Air Jordan 1 sneakers that came in a box bearing multiple counterfeit Nike Trademarks. *Id*. See Figures 2A and 2B.



*Figure 2A*

3



*Figure 2B*

On this transaction alone, Defendant counterfeited over a dozen Nike Trademarks. *See* Figure 3.

| Counterfeit Nike Product | Nike Trademarks |
|---|---|
| | |
| | |
| | |
| | |
| | AIR JORDAN |

4



*Figure 3*

Defendant used similar tactics in other product listings. *See* [28-1] at 2. For example, Defendant used a cartoonish image of a shoe that resembles Nike Dunk footwear and includes images of Nike Air Force 1 footwear. *Id.*; *see* Figure 3. Like the Air Jordan 1 footwear, the Nike Dunk and Air Force 1 footwear are made in multiple versions and are covered by additional Nike

Trademarks. *See* Ex. 5-6, Lakovitsky Decl. at ¶¶ 6-7. It is likely this listing is for other Counterfeit Nike Products that implicate additional Nike Trademarks.



*Figure 3*

Defendant also used the term "Red Thunder Sneaker" in the listing title of a different product. [28-1] at 2. "Red Thunder" is a commonly used term to refer to the Air Jordan 4 footwear in the black and red colorway. *See* Ex. 6, Lakovitsky Decl. at ¶ 7. Thus, it is likely the listing is for other Counterfeit Nike Products.[2] Since Defendant refused to appear and participate in this proceeding, including discovery, it is impossible for Nike to know how many different registered Nike Trademarks were counterfeited by Defendant.

## ARGUMENT

**I.      Nike's Requested Injunctive Relief is Factually and Legally Supported**

    A.      <u>Legal Background</u>

The Lanham Act grants the Court broad equitable authority to fashion the injunctive relief necessary to stop Defendant's counterfeiting. 15 U.S.C § 1116(a); 4 McCarthy on Trademarks and Unfair Competition § 30:10 (5th ed.) ("The judicial power 'to prevent a violation' implies a power

---

[2] As of the filing of this response, Defendant's e-commerce store is closed, so Nike was unable to obtain additional screenshots for the Court.

to prevent an impending violation before it actually occurs and actually causes harm"). *See also Swann v. Charlotte–Mecklenburg Bd. of Educ.*, 402 U.S. 1, 15 (1971) ("Once a right and a violation have been shown, the scope of a district court's equitable powers to remedy past wrongs is broad[.]"); *United States v. Bausch & Lomb Optical Co.*, 321 U.S. 707, 724 (1944) ("Equity has power to eradicate the evils of a condemned scheme by prohibition of the use of admittedly valid parts of an invalid whole."). There is no statute or Seventh Circuit decision requiring that permanent injunctions prohibiting trademark infringement and counterfeiting must be limited to the specific marks that a plaintiff caught a defendant infringing.

Injunctions must be broad enough to be effective and provide Nike with "complete relief." *See Republic Techs. (NA), LLC v. BBK Tobacco & Foods, LLP*, 135 F.4th 572, 588, 592 (7th Cir. 2025); *see also Scandia Down Corp. v. Euroquilt, Inc.*, 772 F.2d 1423, 1431 (7th Cir. 1985) ("The more specific the order, the more opportunities for evasion ('loopholes')"). Broad relief is particularly appropriate when a "proclivity for unlawful conduct has been shown." *Republic Techs. (NA)*, 135 F.4th at 588; *see also Champion Spark Plug Co. v. Sanders*, 331 U.S. 125, 130 (1947) ("where unfair competition is established, any doubts as to the adequacy of the relief are generally resolved against the transgressor").

The Court "has broad power to restrain acts ... whose commission in the future unless enjoined, may fairly be anticipated from the defendant's conduct in the past." *Republic Techs. (NA)*, 135 F.4th at 588; *see also Zenith Radio Corp. v. Hazeltine Research, Inc.*, 395 U.S. 100, 132 (1969) ("[A] federal court has broad power to restrain acts **which are of the same type or class** as unlawful acts which the court has found to have been committed[.]") (emphasis added). This includes the specific unlawful conduct and similar, reasonably related conduct. *See N.L.R.B. v. Express Pub. Co.*, 312 U.S. 426, 435-36 (1941).

7

"[A]n infringer, once caught, must expect some fencing in[.] Thus, a court can frame an injunction which will keep a proven infringer safely away from the perimeter of future infringement." *Tamko Roofing Prods., Inc. v. Ideal Roofing Co.*, 282 F.3d 23, 40 (1st Cir. 2002) (citation omitted); *see also* 4 McCarthy on Trademarks and Unfair Competition § 30:4 (5th ed.). [I]t is appropriate to permanently enjoin the future infringement of works owned by the plaintiff **but not in suit**." *Walt Disney Co. v. Powell*, 897 F.2d 565, 568 (D.C. Cir. 1990) (emphasis added); *see also Princeton Univ. Press v. Michigan Document Servs., Inc.*, 99 F.3d 1381, 1392 (6th Cir. 1996); Restatement (Third) of Unfair Competition § 35 (1995) ("If the defendant intended to deceive or confuse prospective purchasers, however, the injunction may extend beyond the precise scope of the original wrong in order to prevent future misconduct.").

Finally, the Court has granted similar relief for Nike in previous cases. *See, e.g., Nike, Inc. v. facfacsneaker.com, et al.*, No. 23-cv-01714 (N.D. Ill. Aug. 3, 2023) (ECF No. 44); *Nike, Inc. v. DANENG LLC, et al.*, No. 24-cv-11327 (N.D. Ill. Jan. 14, 2025) (ECF No. 52); *Nike, Inc. v. Loanshark, et al.*, No. 24-cv-11976 (N.D. Ill. Jan. 14, 2025) (ECF No. 47).

B.  The Proposed Permanent Injunction Remains Appropriate

Nike is the owner of the Nike Trademarks listed in the Amended Complaint. [13] at ¶¶ 6-8. These marks cover footwear and other related goods. *See* [13-1]. Genuine Nike Products typically include several Nike Trademarks on the product, packaging, or care labels. *Supra* at 2. Nike Products, including the Air Jordan 1 footwear, will include additional Nike Trademarks depending on the specific colorway. *See* Exs. 1-6, Lakovitsky Decl.

Nike's evidence shows that Defendant sold several Counterfeit Nike Products including a variety of Nike Trademarks in wholesale quantities. *See* [28-1]. The same evidence shows

8

Defendant took multiple steps to evade detection and enforcement of its illegal[3] Counterfeit Nike Products sales. *Id.* Defendant's failure to respond to the Amended Complaint "likely suggests Defendant does not take seriously the illegality of the infringing activity." *Virgin Recs. Am., Inc. v. Johnson*, 441 F. Supp. 2d 963, 965-66 (N.D. Ind. 2006). Defendant should not be rewarded for defaulting. *Hamilton-Brown Shoe Co. v. Wolf Bros. & Co.*, 240 U.S. 251, 261 (1916) ("on established principles of equity, and on the plainest principles of justice, the guilty trustee cannot take advantage of his own wrong."). It is also impossible to know what Defendant sold because it refused to appear and participate in the case. *See Sanders*, 331 U.S. at 130 ("any doubts as to the adequacy of the relief are generally resolved against the transgressor"). Likewise, determining the full scope and extent of Defendant's infringement is frustrated by the tactics Defendant takes to conceal its activities. Given the foregoing, it was reasonable for Nike to include the Nike Trademarks listed in the proposed Final Judgment Order.

The Court should afford Nike "complete relief" by entering the proposed permanent injunction including additional Nike Trademarks, which are the commonly infringed marks by online sellers. *See Republic Techs. (NA)*, 135 F.4th at 592. Limiting the permanent injunction to the Nike Trademarks infringed by Defendant does little to prohibit Defendant from selling other Counterfeit Nike Products in the future. *See Scandia Down*, 772 F.2d at 1431. For example, if only the Nike Trademarks seen in the screenshot evidence are included, Defendant does not face any threat of contempt sanctions for selling other Counterfeit Nike Products (which is highly likely).

Nike should not have to start back at square one when it catches Defendant selling counterfeit products again. *Republic Techs. (NA)*, 135 F.4th at 588 (the Court "has broad power

---

[3] Intentional trademark counterfeiting is also a criminal offense. *See* 18 U.S.C. § 2320.

9

to restrain acts ... whose commission in the future unless enjoined, may fairly be anticipated from the defendant's conduct in the past."). There is no indication that Defendant permanently closed its store or will cease selling Counterfeit Nike Products.[4] 4 McCarthy on Trademarks and Unfair Competition §§ 30:1, 30:11 (5th ed.). Enjoining Defendant from infringing the Nike Trademarks listed in the proposed Final Judgment Order is appropriate because it amounts to enjoining "the same type or class as unlawful acts" that Defendant was caught committing. *Zenith*, 395 U.S. at 132; *see also Walt Disney*, 897 F.2d at 568 (Court can "permanently enjoin the future infringement of works owned by the plaintiff ***but not in suit***.") (emphasis added).

Further, Defendant does not face any prejudice from being enjoined from doing something it has no legitimate interest in. Restatement (Third) of Unfair Competition § 35 ("Among the factors that are important in formulating an injunction are the manner in which the plaintiff is harmed, the possible means by which the harm can be avoided, the justification advanced for the defendant's conduct, the potential burden that would be imposed on the legitimate interests of the defendant, and the potential effect upon lawful competition between the parties."); *see also Burger King Corp. v. Majeed*, 805 F. Supp. 994, 1006 (S.D. Fla. 1992) ("[o]ne who adopts the mark of another for similar goods acts at his own peril since he has no claim to the profits or advantages thereby derived.").

## II. Nike Has Shown Cause for its Requested Relief

As explained above, Nike's permanent injunction request is both factually and legally supported. Accordingly, Nike has shown cause for its requested relief. Nike has also shown cause for why it should not be sanctioned. "Sanctions imposed pursuant to the court's inherent authority

---

[4] Intentional counterfeiters like Defendant are aware that rights owners will not be able to recover against their Alibaba financial accounts. *See* Exhibit at 2-4, *Fox Head, Inc. v. The P'ships, et al.*, No. 24-cv-05812 (N.D. Ill. June 30, 2025) (ECF No. 55-1).

'must be premised on a finding that the culpable party willfully abused the judicial process or otherwise conducted the litigation in bad faith.'" *Ebmeyer v. Brock*, 11 F.4th 537, 546 (7th Cir. 2021) (citation omitted). In view of the above, there is no support for the proposition that requesting broad injunctive relief, particularly the type of relief requested here, amounts to conduct the Court can sanction under its inherent authority. Fed. R. Civ. P. 11 is also inapplicable to proposed orders. *See Snow Machines, Inc. v. Hedco, Inc.*, 838 F.2d 718, 726 (3d Cir. 1988) ("We observe, however, that there are substantial reasons to believe that [Rule 11] does not" apply to a proposed order). As such, the Court's show cause order should be discharged.

## CONCLUSION

For the foregoing reasons, Nike requests the Court grant the requested relief and discharge the order to show cause. If the Court believes Nike's requested relief is overly broad despite the above authority, Nike can submit a revised proposed order removing the Nike Trademarks not used in connection with the Air Jordan 1's after the October 23, 2025, hearing.

Dated this 16th day of September 2025.    Respectfully submitted,

/s/ Justin R. Gaudio
Amy C. Ziegler
Justin R. Gaudio
Marcella D. Slay
Berel Y. Lakovitsky
Greer, Burns & Crain, Ltd.
200 West Madison Street, Suite 2100
Chicago, Illinois 60606
312.360.0080
312.360.9315 (facsimile)
aziegler@gbc.law
jgaudio@gbc.law
mslay@gbc.law
blakovitsky@gbc.law

*Counsel for Plaintiff Nike, Inc.*

11

**CERTIFICATE OF SERVICE**

I hereby certify that on the 16th day of September 2025, I will electronically file the foregoing with the Clerk of the Court using the CM/ECF system, I will electronically publish the documents on a website, and I will send an e-mail to the e-mail addresses identified in **Exhibit A** hereto that includes a link to said website.

/s/ Justin R. Gaudio
Amy C. Ziegler
Justin R. Gaudio
Marcella D. Slay
Berel Y. Lakovitsky
Greer, Burns & Crain, Ltd.
200 West Madison Street, Suite 2100
Chicago, Illinois 60606
312.360.0080
312.360.9315 (facsimile)
aziegler@gbc.law
jgaudio@gbc.law
mslay@gbc.law
blakovitsky@gbc.law

*Counsel for Plaintiff Nike, Inc.*
